All right, counsel, our final case this morning is 18-2169 McCowan v. Morales. Mr. Standbridge. Thank you, Your Honor. May it please the Court. Counsel, I'm Mark Standbridge on behalf of Appellant Mark Morales. Your Honor, the District Court's fatal flaw in this case and its decision below is that it denied my client qualified immunity on the plaintiff's excessive force claims under a novel theory without having clearly established law to support that theory. And for once, I'm going to come before this Court and say you don't have to take my word for it. You can look at the District Court's two opinions below where it admitted it was allowing this case to proceed on a novel theory of excessive force, that it was debatable whether or not Mark Morales was on notice as of August of 2015 that his conduct might be unconstitutional, and that, most strikingly, there is no case law on point. But, of course, on appeal, that's being challenged. That is precisely the question. I guess it's going to ultimately be up to us to decide whether this case is on point or not. Well, that is correct, but I would remind the Court that the burden is always on the plaintiff. We understand that, but that has nothing to do with the colloquy that you just quoted. Certainly. That is the law. And I think what your Honors are going to find is that there is simply an absence of case law in the Fourth Amendment context that we find ourselves in in this case that would have told Mark Morales that his conduct... Did the District Court cite to any Fourth Amendment case for denying qualified immunity? It really did not. What it largely cited to were Eighth Amendment cases, and even then... Did she cite to any Fourth Amendment cases? I'm trying to remember. I don't believe that it did, at least in terms of either the rough ride, the handcuffed being handcuffed while transported claim, or the subsequent denial of medical care claim. My recollection, and the Court, feel free to correct me if I'm wrong, but my recollection... Staying in the rough ride scenario, we have an arrest, transportation to the police station, and I guess it's an excessive force argument, and there's really a fairly widely developed body of excessive force law, and it's more or less a reasonableness standard. That is precisely correct. The facts are obviously disputed here, but how is this case really materially different than an officer taking a handcuffed arrestee and pushing him to the ground or tripping him or throwing him against the wall, mistreating him between arrest and incarceration? How's the facts here that he got bounced around the back seat of the car any different than that? And wouldn't my previous examples, wouldn't those clearly be potentially excessive force cases? I don't believe so, Your Honor, because the examples that you have just set forth are more egregious factual scenarios that are, to an extent, dealt with in published case law. What do you mean more egregious? I mean, if the allegations here are true, and I think counsel did cite two cases out of circuit where it involved driving a vehicle, how do we draw the line between a push and a shove, which might be excessive force, and a rough ride, which might be excessive force, if it's egregious enough? Well, the line is drawn in looking at the scene objectively. What Officer Morales is alleged to have done is simply handcuffed Mr. McCowan, put him in the back of the car without seatbelting him, and then driving fast or driving recklessly, as the plaintiff has put it, the 0.8 miles to the police station. This is Las Cruces, right? That is correct, Your Honor. So he's merely handcuffed is your summary of the guy saying, hey, I'm injured, would you please handcuff me with my hands forward because I can't handle it in the back? That's my understanding. Is that what you would consider routine handcuffing? It is without some objective sign that he's injured as a result of being ---- Did he scream and yell and demonstrate pain? Well, again, taking it to a certain extent, that's a subjective statement coming from him. It is a summary judgment stage now, and the question is, is there evidence to support his claim? And he is saying it is not a mere handcuffing. It is handcuffing and then being assaulted via the way the vehicle was driven. And you're saying there's no case law, but what about Weigel v. Broad, a 10th Circuit case, which said the use of force, and I think using the vehicle to administer that force is force, if applied after a defendant has been subdued and handcuffed is a violation of the Eighth Amendment. How about Graham, which said that, excuse me, not Graham, Dixon v. Richter, where the defendant was subdued and controlled, and he wasn't even physically constrained, but the court said that force on him was a, I think, a Fourth Amendment violation, and Casey v. Federal Heights. I mean, there's at least three 10th Circuit cases, it seems to me, that they're not mere handcuffing cases. They say when you have subdued and immobilized a person so he cannot fight back, if you administer force against him and he can't fight back and he is restrained, whether that force is administered by kicking him in the face, slamming him on the ground, or slamming him in the car, could be an Eighth Amendment violation. At least could be enough that you don't get thrown out on summary judgment. Maybe you'll win it, maybe you won't. Maybe you'll prove it, maybe you won't. But it's not something you get summary judgment on. I think there's, it seems to me, there's at least three 10th Circuit cases that are clearly established on this, even if the district court didn't recognize those cases. And I think the district court did not recognize those cases, and smartly so, because they did involve different factual situations. Again, more egregious factual situations, either pushing or shoving. Why is pushing or shoving more egregious than taking a handcuffed man who can't balance or hold himself or put his hands out to protect himself and knocking him back and forth like a roller coaster in a police vehicle? Because pushing and shoving... While you're laughing. Even at a basic gram level of analysis. Handcuffing a suspect and putting him in the back of the police car, even without seatbelts. That by itself, no case of this circuit has held that that is... And that's not the case here. They're not arguing that. They're saying that's, we're not saying that that is a Fourth Amendment violation. They're saying that, plus, injuring him by rolling him, by driving in an unreasonable, aggressive, and violent way, that caused him to bang back and forth against the police car. It wasn't just... This is not a handcuffing case alone. And even then, even taking the facts as the plaintiff alleges them, taking the facts as the district court found them, there is still no factually on point case from this circuit that has been published that addresses that kind of claim. That was the lesson that we got from O'Dulba versus Pickens, is that, in its opinion, in 2005, this court looked at a series of taser cases, because the O'Dulba case happened to involve a taser claim, use of excessive force. After being remanded from the U.S. Supreme Court, the court had to take a harder look at those same taser cases on remand and do the fine-line analysis that is required for every qualified immunity case. And that's what is missing here. That was what was missing in both the district court's opinion and in the plaintiff's response brief here on appeal. Earlier this year, in Doe versus Warder, this court told us, it's not enough for a plaintiff whose burden it is to clearly establish law to cite a series of cases that are roughly similar. The plaintiff has to go through the extra step of analogizing those cases, telling this court and telling the parties why they are factually on point. Well, you have to decide what are the important facts to make something on point. It's not that you don't have a red car versus a green car. It is, to me, the important facts are fairly limited. Is the defendant restrained and unable to protect himself? And is gratuitous force applied against that defendant who cannot protect himself when that force is not needed or even argued to be needed to further restrain or to cause anything of law enforcement validity? And we have at least three cases with those facts where on point. And whether the violation or assault is by a rocking and rolling police car or by a knee in the back, it seems to me that that is not one of the critical facts that has to be identical. I would disagree, Judge. I would posit that the alleged mechanism of force is very much the distinguishing fact in a lot of these Fourth Amendment cases. And that is the central thesis of our argument. Does the record demonstrate any reason for the manner in which the car was driven between the point of the handcuffing and taking him into custody? Not really, Your Honor. I believe the record is silent. I would posit that any police officer who is out on patrol on a night does want to get back to the station quickly to process an arrestee so that that person can then be sent on to county lockup and then be subject to determinations of probable cause. Let me tell you about the driving. In the driving, we're told that he made repeated sharp turns at high speed, that he was slammed around in the backseat, quote, like a ping-pong ball, which we have to accept for purposes of our analysis, and that McGowan asked Morales to slow down, but Morales simply laughed at him and continued to drive recklessly. Now, my question is, is there anything in the record that justifies or that mitigates this allegation? Not to my knowledge, Your Honor. All we have in the record in terms of the transport from the scene of arrest to the LCPD holding station is the distance verifiable by Google Maps. The record doesn't really speak to the particular route that Officer McGowan took. The record is simply silent at that point. I mean, I want you to answer any other questions that either of my colleagues have, but I am much more troubled, though, about the second issue, the medical issue, the failure to provide medical assistance. I'd like at some point for you to address that, because at least from my point of view, that seems to be something that is— that ruling seems to be much more debatable. I'm happy to do so, Your Honor. Again, what you're looking at in that context, because Mr. McGowan is still on arrestee, we're still under the Fourth Amendment, we are looking at what is objectively reasonable. It is objectively reasonable. I think the case law that we've set forth supports that, and even the district court itself said this at the summary judgment hearing, is that it's not unconstitutional to handcuff an arrestee to a bench. I can tell the court anecdotally that in a prior civil rights lawsuit, we actually got deemed for doing the opposite. The district court has already ruled on the handcuffing, and that's not an issue for us on appeal. Correct. The question—I'm not asking about that at all. I'm asking about the second ruling about whether he was denied medical assistance at the police department, and whether that claim for Eighth Amendment violation is entitled to go forward. District court said yes. You say that's an error. I do. And I want to know why. Because the Eighth Amendment doesn't apply in this factual situation. It is still Fourth Amendment objective reasonableness. We're not—the LCPB holding cell is not a long-term facility. This is not a pretrial detainee awaiting trial that we're talking about. This is a person who has just been arrested minutes ago, and is awaiting transport and booking to a county facility, an intermediate holding cell, where he will then presumably go before a judge for probable cause. So when do you think—he has not yet been arraigned. Correct. But he has gotten to the police department and formally charged. He's been—yes, he's been arrested on suspicion of committing a crime. As a matter of law, that the Eighth Amendment cannot get triggered until after the arraignment. Yes, Your Honor. I would say it's either the 5th or 14th that gets triggered after arraignment under this court's opinion in Porro v. Barnes. But then you're saying that under the Fourth Amendment, that this is not a failure to provide medical help. What? Because there is no right under the Fourth Amendment for medical assistance? What is your argument under the Fourth Amendment? Really because under the procedure that was applied in this case, we were going to then transport him to the county detention facility that does do a medical evaluation. And that's, in fact, what happened in this case. This is a very temporary holding cell. And absent some obvious indication, such as an open wound or a fractured neck or a neck brace that's talked about in some of the case law that's cited by the plaintiffs, absent some obvious verifiable evidence that the plaintiff is suffering from some medical condition, then we're not required to provide on-site medical care. So you're agreeing that there is a Fourth Amendment obligation under some circumstances to administer medical assistance. Correct, when the obvious condition is there. But you're saying it has to be obvious, and here it's not obvious. Precisely. So that is the essence of that particular argument. Yes, that is precisely correct, Your Honor. And I'd like to reserve my remaining 20 seconds. Well, before you do, maybe with Judge Tinkovich's equitable consideration, he'll grant you more time. But I'm really troubled by this allegation that the officers pulled McGowan up, causing his shoulder to audibly tear. Is that enough? It's not. And, in fact, oddly enough, the district court itself recognized that. And this court has recognized that recently. That is a perception on the part of the plaintiff. That is not a medical diagnosis. That is not enough. That is not competent evidence that would create a dispute of fact. He's sitting there crying out for an hour, and then manhandled in this manner, and then hauled off to the detention center, resulting in his having two surgeries to his arm, to his shoulder. And all of that is objectively not enough. I would posit that's so, Your Honor, particularly given his admission that later, when he goes to the county detention facility, he doesn't even ask for medical treatment. And with that, I'd like to reserve my 20 seconds. I'll give you some additional time. Thank you, Your Honor. Chief Judge Tinkovich, and may it please the court. My name is Daisy Chaparro, and along with James Taney, I represent Appley Warren McCowan. Today's case, Your Honors, presents this court with the opportunity to stay true to the purpose of the qualified immunity doctrine, which is to shield police officers of personal liability for conduct which they did not have fair notice, constituted a violation of a person's rights. But in this case, Your Honors, we have deliberate conduct, which Officer Morales had fair notice, would be violative in nature, and in essence, he's not entitled to qualified immunity for such conduct. Now, turning to the first prong, that of the excessive force, as Your Honors discussed with the appellant, there is clearly established law that would put Officer Morales on notice that handcuffing Mr. McCowan and putting him in the back of his vehicle when he did not have the opportunity to protect himself, not seat belt him in direct contravention with the policies that he was trained on through the Las Cruces Police Department, and then amusing himself by deliberately driving recklessly, laughing at the pleas that Mr. McCowan, when he asked him to drive more safely and to slow down, all of that was objectively unreasonable. Do you agree we're under the Fourth Amendment for this claim? No, Your Honor, I would not agree with that. And the reason for that is because as this court recognized in his State v. Booker, there's sort of a gray area between when a seizure is actually effectuated. At the point in time in which Mr. McCowan was the subject of this excessive force, he'd already been arrested and subdued. And so this analysis could be analyzed by this court either under his Fourth Amendment rights or even his Fourteenth Amendment rights. But under any standard that Your Honors choose to adopt on this de novo review, Officer Morales' conduct was objectively unreasonable. And so if Your Honors decided that this, in fact, was exclusively a Fourth Amendment analysis, we would turn to the grand factors. And we would consider things like, for example, the charges that were being lodged against Mr. McCowan. We know clearly from this record that he was being charged with two misdemeanors. One being driving under the influence of alcohol and the second being driving without an operational headlamp. And as the district court noted in his opinion, while driving under the influence is certainly a serious offense, it is a misdemeanor under the law. Why would that matter? I mean, he could be arrested for murder and you can still have your excessive force claim. Sure, Your Honor. But it matters because in Graham v. O'Connor, the Supreme Court told us that is one factor to consider when we're asked to evaluate the situation the officer was posed with. In this case, the record is absolutely deployed of any evidence that Mr. McCowan was ever posing any threat of safety to Officer Morales himself or to anyone in the community. It's devoid of any evidence that Officer Morales had to ask him more than once to comply, even when it came to the field sobriety test, when it came to any command that he gave him. The record is clear, even by appellant's own account and by his own affidavit testimony, that Mr. McCowan complied the entire time. There was no reason for Officer Morales to objectively believe that he needed to use any more force than was necessary, as he did in this context. Now, if Your Honors were to believe that this actually should be analyzed under the 14th Amendment, of course we have the additional factor which involves analyzing the motives of the state actor. And even if Your Honors considered that, we know from the record, as Your Honors noted, that Mr. McCowan's affidavit testimony makes clear that when he requested that Officer Morales slow down, Officer Morales didn't do that. He instead laughed and proceeded, driving in the reckless and erratic manner, flinging McCowan's body from one side to the next in that police vehicle. It seems a little odd that if we're talking about clearly established law and we're not, you're not sure whether it's a 4th or a 14th Amendment claim. It seems a bit of a disconnect if we don't know the correct amendment of the Constitution and then to argue that it's clearly established. But for purposes of the 4th Amendment, you're saying Graham v. Connor is the case. Is there a Tenth Circuit case that you would supplement that with? Well, not in the, with the identical fact scenario that we have in this case. But as Your Honors recognized just 11 days ago in the Ayin v. Sibling case, when the Supreme Court laid out opinions like Pauley v. White and Mullinex, it never established that we have to present case law that is identical in factual scenario. And that's precisely what Appellant is asking this court to do. Appellant is asking this court to find that if there is no Tenth Circuit case which has the identical fact scenario as a person is being arrested, he's already been subdued, he's on his way. What's the closest Tenth Circuit case? One of the closest Tenth Circuit cases, Your Honor, is Dexter v. Ford Motor Company in which this court distinguished a claim as Appellant has repeatedly mischaracterized as Appellee's claim of simply handcuffing. And in that case, in 2004, this court recognized that standing alone, a tight handcuffing case, probably does not constitute a violation of the constitutional rights of an arrestee. However, that coupled with reckless and erratic driving, in fact, could violate a person's constitutional rights. Moreover, Your Honors, as the Supreme Court has laid out, an Appellee does not have to present case law that is directly on point from the Supreme Court or from the Tenth Circuit, but rather the weight of authority. And as cited in our briefs, there were several cases from other circuits that would have put Officer Morales and a reasonable officer on notice that his conduct was violative in nature. Now, what is important about that, Your Honors, is that Appellants criticize the District Court's order because the District Court says in his order that it is debatable whether Officer Morales subjectively knew. But that's not the standard, as Your Honors are well aware. It is whether a reasonable officer in his position would have had fair notice, and a reasonable officer understanding what force is necessary to effectuate an arrest, understanding whether the arrestee is posing any threat of safety to him or the community, whether he's being charged with any violent crime, and whether he's not complying, as the Supreme Court held in Graham v. Conner, would have understood that putting him in the back of that police car, refusing to handcuff him forwards versus backwards, despite the fact that he notified him he had a pre-existing condition, caused him pain, coupled with the deliberate choice to amuse himself by driving erratically and recklessly, was unnecessary and excessive. If we analyze the case under the 14th Amendment, I think your alternative argument, what's the closest analogous case that provided fair notice? Well, Your Honor, what's important about the 14th Amendment, and I want to make sure I answer your question clearly, but in Ray Booker, this Court made clear that even when there is a distinction between the test analyzed in the 4th Amendment or the 14th Amendment, when it makes no practical difference, we don't have to have a particular case that is subject of a 4th Amendment violation claim. And so in that light, Your Honors, there's a plethora of cases, and actually I should backtrack, there's about four cases that we cited to in our briefing that discussed an officer going on a, taking an inmate on a rough ride, in violation of his 8th Amendment rights, which are applicable to even an arrestee through the 14th Amendment due process clause. And so all of those cases, Your Honors, that have been cited lead us to the inevitable conclusion that the force that Officer Morales exhibited on Mr. McCowan was completely unnecessary, excessive, and at no point in time, under any amendment, is it justifiable, whether it be objectively or subjectively. Now, turning to our second point, which I feel was largely unaddressed, but I'd like the opportunity to address it with the Court. There's been an argument that Mr. McCowan, because he had not been arraigned, was not privy to any of his 14th Amendment or 8th Amendment rights. Again, in 2004, in the case of in Ray Booker, this Circuit made it clear that the 8th Amendment right to be free from cruel and unusual punishment and the 8th Amendment right to receive medical care when the officer knows that it is necessary and the arrestee voices that concern and it is visible and apparent, that is applicable and an arrestee is subject to those rights through their 14th Amendment due process right. And that case is what, did you say? That was in Ray Booker, Your Honor, from the 10th Circuit in 2004. In re-estate of Booker, I apologize for that. And in essence, when a court analyzes whether someone has been deprived of their right to medical care, we turn to what's become known as the Estelle Rule. And that was, of course, the Estelle v. Gamble case out of the Supreme Court. And we analyze whether an arrestee informed the police officer of a medical condition and whether they displayed outward signs of needing medical care. We know from this record, Your Honors, and from Mr. McCowan's affidavit testimony, that he in fact voiced on a number of occasions his immediate need for medical care. We know from his affidavit testimony that even from the inception of this series of events when he's arrested, he notified Officer Morales that he had a pre-existing condition, that the handcuffing alone caused him pain. Then we know from this record that once he arrived at the detention facility, he again cried and screamed and begged audibly, not just to Officer Morales, but the other officers who were there at the detention facility asking to be handcuffed in a different manner. Then we know that at some point in time, Mr. Officer Morales had to go into the cell and loosen the handcuffs because he visibly saw that Mr. Morales' wrists were purple from the handcuffing alone. Then we know that Mr. McCowan, by his account, anywhere between, we know from the record it's anywhere between one hour, two and a half hours, that he cried and screamed audibly asking for this medical attention. So no question, this subjective component of an arrestee needing to notify of his need for medical care. What was he asking for? Was he asking for help on his wrists because of the handcuffs' tightness? Was that what he was yelling about hurting? Well, by his account, Your Honor, he was just yelling, asking for medical care because he was in pain. The police department got to have some notice about what kind of medical care he wants, and wasn't his complaint always that the handcuffs were hurting him? No, Your Honor. His complaint also involved his shoulder pain. The shoulder pain, and Judge Lucero pointed out that there was evidence that he was lifted roughly and hurt his shoulder, but did he ask for medical assistance because of his shoulder? Yes, Your Honor. Under his affidavit testimony, which we know is beginning on page 121 of the record, he voiced a concern for medical care. And did he say why? I mean, it's one thing to say we know that people in jail are very unhappy to be there, and many of them have all kinds of issues. And if every time you cry out for help that I'm hurting, if that gives rise to a constitutional claim, the jails are going to have no time to do anything else. So they've at least got to be specific about what his medical need was. And I was unaware that he said my medical need is my shoulder. Now, there may have been an excessive force claim for his shoulder, but that's not what this issue is about. The shoulder issue is not – he's not saying you hurt my shoulder and you used excessive force. My claim is you didn't give me medical assistance. And so I just am trying to see how the medical assistance claim relates to his shoulder as opposed to simply the handcuffs are too tight. Your Honor, the reason that it relates to his shoulder is because this was a series of events that ultimately led to the injuries to both of his shoulders, which required surgery. Now, one of Appellant's arguments is that the medical records and evidence showing the direct mechanism of injury are not a part of the record. And that's simply because obviously we're at the summary judgment stage, and that was not something that we were – that was not a piece of discovery that the record was developed on at the stage in which the case was stayed. But nevertheless, Your Honor, the fact that Officer Morales objectively was able to see that Mr. McCowan's wrists were purple indicated to him that there was a need for medical care. I'm not sure that Mr. McCowan – And that goes to the wrist, but it shows that his wrists were hurt. But the need for medical assistance is a serious medical condition and an immediate need for it. Now, sore wrists or red or abrased wrists may not need immediate care, and they knew within an hour he was going to go to a jail where there would be medical assistance needed. And so the question is, could they have even gotten a doctor any faster other than to do exactly what they did, which was to send him to the jail where there was medical assistance? So this whole thing – that issue is very murky to me. I would imagine, Your Honor, that that would be appellant's position, that if there was a brief delay or that if it didn't amount to a long delay, then he was not entitled to that constitutional right. Or if it wasn't a serious medical condition that needed immediate attention. But we know, Your Honor, from the record that ultimately he did require these two surgeries and has amounted – has accrued $119,000 worth of medical bills. And so we know that subjectively and objectively, Officer Morales deprived him of his right to have medical care in that moment. Well, we have no – there is no – I don't know of any evidence that says that had he gotten the medical assistance immediately that that shoulder surgery wouldn't have been needed. Or that indeed even the shoulder surgery was occasioned by the rough lifting. But the fact is that I don't think there's any evidence in the record that waiting until he got to the jail caused any additional problem. That may be true, Your Honor, and the record is signed on that. And that's where he got his medical assistance. As this circuit made clear, though, and in Reyes State of Booker, again in 2004, even a brief delay can be unconstitutional because his right to medical care arose in that moment. And so even if he received medical care eventually, that does not absolve an officer of having violated that arrestee's constitutional rights to medical care. It's for those reasons we ask that Your Honors affirm the decision of the District Court. Thank you, Counsel.  May it please the Court. I want to begin by quoting something from the appellate's response brief, page 17. Appellate does not dispute appellant's assertion that the Fourth Amendment is the relevant provision for determining the constitutionality of appellant's conduct. We're here on a Fourth Amendment case, not a Fourteenth Amendment, not an Eighth Amendment case. The case cited to this Court by Mr. McCown's counsel was Graham v. Conner. We know from the Supreme Court's repeated decisions and from this Court's decisions in the last ten years, Graham v. Conner by itself doesn't establish clearly established law in the excessive force context. It is a starting point. And in fact, what Graham tells us that's pertinent to this case, in a Fourth Amendment analysis, we do not look at whether the government actor acted maliciously or sadistically as the appellee has asserted here and as the District Court asserted. That's why Graham, though it's a starting point, can't serve as clearly established law. And in fact, cuts in our favor. This panel, this very panel. Go ahead and wrap up. Your time's expired. Yes, Your Honor. We would ask that the Court reverse the denial of qualified immunity. Thank you, Counsel. All right, Counselor Hughes, we appreciate the arguments.